### In re SOUTHWEST FLORIDA HEART GROUP, P.A., Debtor.

No. 9:05–bk–17167–ALP.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Feb. 7, 2006.

Jeffrey W. Leasure, Fort Myers, FL, for Debtor.

### ORDER ON MOTION TO ASSUME LEASE AGREEMENT AND LEASE AGREEMENT ADDENDUM

(Doc. No. 162)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in the above-captioned, yet-to-be confirmed Chapter 11 case is a Motion to Assume Lease Agreement and Lease Agreement Addendum (Doc. No. 162) (Motion to Assume) involving an unexpired non-residential lease entered into by Southwest Florida Heart Group, P.A. (Debtor) and Heart Group Realty, LLP (Realty). Ordinarily, the disposition of the Motion would not present any special problems; however, due to the interconnection of the parties involved and the unique issues raised by the Motion, the resolution of the dispute between the parties is complex.

In order to put the controversy and the precise issues under consideration into proper focus, it is appropriate to consider the historical background of the entities involved, the relationship between the parties and the interconnection between the principals of the entities.

The Debtor was formed by a group of physicians who established a medical practice providing cardiac care services. The Debtor operated under the name of Southwest Florida Heart Group, P.A. The Debtor maintained three operations; one in Naples, Florida; one in Bonita Springs, Florida; and one at 8540 College Parkway, Fort Myers, Florida 33919 (the Fort Myers Facility). The Fort Myers Facility is a four-story medical office building and is owned by Realty.

Realty was originally formed as a Florida General Partnership in April 23, 1993, by Dr. Richard A. Chazal (Dr. Chazal), Dr. James A. Conrad (Dr. Conrad), Dr. Michael D. Danzig (Dr. Danzig), Dr. M. Eric Burton (Dr. Burton), Dr. David Axline, Dr. William M. Miles, Dr. Herman L. Spilker, Dr. Lawrence A. Kline, Dr. Brian Hanlon, Dr. Carlos Santos Ocampo, Dr. Steven Lee, and Dr. Michael Corbellini. Realty was registered with the State of Florida as a General Partnership, with Dr. Danzig as its managing partner. On December 14, 2000, Realty changed its legal format and became Heart Group Realty, LLP. The registration filed with the State of Florida (Realty Exh. No. 3) indicates that Dr. Danzig is the Registered Agent for both the General Partnership and the LLP.

At the time relevant, the physicians involved with the Debtor, notably Dr. Chazal, Dr. Danzig, Dr. Burton, and Dr. Conrad, were the principals of Realty and also of an entity know as The Heart Group PL (The Heart Group), which was formed shortly before the Debtor ceased its operations and before it filed its Petition for relief under Chapter 11.

The record reveals that on or about January 1, 1997, Realty, as landlord of the Fort Myers Facility, entered into a Lease Agreement, and a later signed Lease Agreement Addendum, with the Debtor, (together, the Lease). The effective date of the Lease was January 1, 1997, and the property was leased for a ten year period. The Lease Agreement Addendum later extended the term until 2017. Pursuant to Paragraph 3 of the Lease, the annual rent was $807,360.00, plus Florida sales tax. The Lease further provided for an increase of the base rent by the greater of 5 percent or the applicable Consumer Price Index (CPI).

It is without dispute that the principals of the landlord Realty were also principals

of the Debtor, all of whom were practicing physicians with the group under the aegis of Southwest Florida Heart Group, P.A. An apparent dissension between the shareholders led to the decision to terminate the business operation of the Debtor. Several of the physicians left the State of Florida and several formed their own groups and currently occupy the facilities used by the Debtor in Naples and in Bonita Springs, respectively. None of these operations are involved in the current controversy.

However, this is not the case with the Fort Myers Facility. On August 25, 2005, or a few days before the Debtor filed its Petition for Relief under Chapter 11 on August 29, 2005, the Debtor and The Heart Group entered into a sublease (Debtor's Exhibit No. 1) (the Sublease). The principals of The Heart Group at the time of the Sublease were Dr. Burton, Dr. Danzig, Dr. Chazal, and Dr. Corbellini. The fact of the matter is, that Sublease was signed by Dr. Burton as president of the Debtor/Sublessor, and by Dr. Burton as president of The Heart Group/Sublessee.

Pursuant to the terms of the Sublease, The Heart Group subleased the first floor of the Fort Myers Facility. The Sublease required a monthly rent payment to be paid to the Debtor, fixed at twenty-five percent of the rent the Debtor was obligated to pay to Realty under the Lease. The Sublease commenced on September 1, 2005. It did not specify a fixed termination date, but provides that the sublease includes and is subject to the terms of the Debtor's lease with Realty. The Sublease further provides that if any of the following occurs the Sublease may be terminated:

(1) Written notice of the sale of the premises by Realty;

(2) Written requirement of Realty to the Debtor to terminate the Sublease; or

(3) Such other event, which under the terms of the Lease will result in the termination of that Lease.

Notably, the Sublease may also be terminated at any time by either party upon a sixty (60) day written notice to the other party.

It is without dispute that The Heart Group did occupy and is currently still occupying the first floor of the Fort Myers Facility and has not paid the Debtor the rent fixed by the Sublease, which became due for the months of September, October, November, and December of 2005. It was not until January 28, 2006 that The Heart Group made a payment to the Trustee in the amount of $70,000. It is further without dispute that, at the time the Debtor ceased its operations on August 31, 2005, the Debtor had on the subleased first floor a large amount of medical equipment. Although the Trustee, shortly after his appointment on November 21, 2005, made several requests of The Heart Group to designate which of the equipment and fixtures described above it desired to purchase, it was not until mid-January of 2006 that The Heart Group provided the list to the Trustee. This Court notes that the list provided to the Trustee was never offered or admitted into evidence.

On August 29, 2005, the Debtor filed a Petition for Relief under Chapter 11. On August 31, 2005, the Debtor–in–Possession sought the approval of the Sublease of the Fort Myers Facility (Doc. No. 14). On September 13, 2005, Steven R. West, a creditor, filed an Objection to the Approval of the Sublease (Doc. No. 43). On November 8, 2005, this Court entered an Order and deferred ruling on the Motion for Approval of the Sublease (Doc. No. 118).

On November 21, 2005, this Court entered an Order Approving Appointment of Trustee, and appointed Louis X. Amato as Chapter 11 Trustee (Trustee) (Doc. No. 138). In due course, the Trustee reviewed the situation and, on December 7, 2005, commenced an adversary proceeding naming as defendants The Heart Group, PL; Heart Group Realty, LLP; Collier Heart Group, PLLC; Richard A. Chazal, Erick M. Burton; and Michael D. Danzig. (Adv. Pro. No. 05–910). In his lawsuit, the Trustee asserts numerous causes of action, including trespass, fraudulent transfers, and breach of fiduciary duty, and seeks injunctive and other equitable relief, as well as money damages.

On December 29, 2005, the Trustee filed the instant Motion to Assume. On January 11, 2006, Realty filed a Response to Motion to Assume Lease and Lease Agreement Addendum (Doc. No. 168). At this point it should be noted that earlier, on November 15, 2005, Realty filed an Application for Payment of Administrative Expenses (Doc. No. 131). On December 6, 2005, the Trustee filed a Response and Objection to Heart Group Realty LLP for Payment of Administrative Expenses (Doc. No 148). It is without dispute that neither the Debtor-in-possession nor the Trustee has paid any money to Realty so far.

The hearing on the Motion to Assume was set for January 19, 2006. On January 18, 2006, the Trustee commenced a second adversary proceeding naming the Debtor, The Heart Group, and Realty as defendants. (Adv.Pro. No. 06–031) (together with Adv. Pro. No. 05–910, Adversary Proceedings). In this lawsuit, the Trustee asserts a substantive consolidation action and seeks a declaration that the assets of The Heart Group and Realty are the assets of the Debtor.

In the interim, Realty entered into a contract to sell the Fort Myers Facility.

(Exh. No. 1 to Motion to Supplement Record, Doc. No. 190). It appears that if the sale, which is scheduled to close on February 8, 2006, is consummated, the Lease will be cancelled. It should be evident from the foregoing, if this occurs, that the Trustee's Motion to Assume is rendered moot since no valid lease will remain in existence that could be assumed.

To further complicate the matter, a few days before the scheduled final evidentiary hearing on the Motion to Assume, the Trustee announced that it had an Agreement for the sale of the Fort Myers Facility (Agreement) (Trustee's Exhibit 1). The Agreement identifies the sellers as the Heart Group Realty, LLP, Louis X. Amato, as Trustee, and identifies College Riverwalk, LLC, a Florida Limited Liability Company (College Riverwalk), as the purchaser. Notwithstanding the recitation in this Agreement and notwithstanding that Realty is identified as a seller, Realty never agreed to be a party to the Agreement, and never agreed to sell the Fort Myers Facility to College Riverwalk LLC. Thus, the statement in Paragraph 1 of the Agreement, that the seller (i.e. Realty) agrees to sell and the buyer agrees to purchase is untrue. Realizing the impossible posture of the Trustee to bring the Agreement to fruition and effectuate the sale to College Riverwalk absent Realty's consent, the Trustee, by a Motion to Sell Property filed on February 2, 2006 (Doc. No. 188), seeks to sell the property free and clear of Realty's interest pursuant to Section 363(f) of the Bankruptcy Code.

The immediate matter under consideration is the Trustee's Motion to Assume. Section 365(b)(1) dictates the conditions a debtor must comply with in order to assume an unexpired lease after a default, and provides:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure such default ...

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 363(b).

The Trustee is capable of meeting the first two requirements. The record reveals that the Trustee has more than $1 million in cash and will be able to pay Realty whatever amount this Court ultimately determines is the total amount required to cure the default. Also, there is nothing in this record that shows what actual pecuniary loses were suffered by Realty as a result of the default.

It is equally clear that the Debtor will not be able to provide adequate assurance of future performance. The Debtor is economically defunct and does not operate now and does not intend to operate in the future and will not generate the income necessary to perform if the Trustee is permitted to assume the Lease. However, the Trustee does not contend that it can assure future performance and indeed does not intend to perform under the Lease in the future.

The Trustee instead intends to assign its leasehold interest in the Fort Myers Facility in conjunction with a sale to College Riverwalk, pursuant to Section 363(f), free and clear of Realty's interest. Under the Trustee's plan, College Riverwalk, as the assignee of the lease and purchaser under a Section 363 sale, will become the landlord and the owner, which interests would merge. The Lease would cease to exist, mooting the requirement of adequate assurance of future performance.

Section 363(f) permits the Trustee to sell property free and clear of any interest of such property of an entity other than the estate under certain conditions, which are as follows:

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

The Trustee claims he can sell the Fort Myers Facility free and clear of Realty's interest, as one of the above provisions is satisfied. This Court is not willing to accept this proposition for the following reasons: (1) the Trustee's attempt to sell pursuant to Section 363(f) cannot succeed for the simple reason that the Trustee is unable to meet any of the conditions set forth in the section; and (2) the Trustee's claimed interest in the property is merely its interest in the Lease with Realty and certain rights arising from the Adversary Proceedings previously filed.

The Trustee cannot satisfy any of the conditions of Section 363(f). Realty does not consent to the sale, and it holds an

ownership interest, not a lien on the property. Also, Realty cannot be compelled to accept money for its interest in the property, and the Trustee has not pointed to a provision of applicable nonbankruptcy law that would allow this Court to sell the property free and clear of Realty's interest.

Finally, while Realty's interest is partially the subject of the pending Adversary Proceedings initiated by the Trustee, such claims do not establish a bona fide dispute as to Realty's ownership interest, and are insufficient as a basis to sell the property free and clear of the interest.

Further, it is self-evident that the Trustee can only sell property of the estate. *E.g. Connolly v. Nuthatch Assocs. (In re Manning),* 831 F.2d 205, 207 (10th Cir.1987) While a leasehold interest is property of the estate, the leasehold interest is not an ownership interest, and does not qualify the Fort Myers Facility as property of the estate. Even when combined with the claims asserted in the Adversary Proceedings, the validity of which is yet to be determined, the Debtor's interest does not form the basis upon which this Court can authorize a Section 363(f) sale free and clear of Realty's ownership interest. As this Court is satisfied that a leasehold interest and any potential rights arising from the Adversary Proceedings are insufficient to support a Section 363(f) sale, and the Trustee has not satisfied any of the conditions of Section 363(f), the Trustee cannot assure future performance, and therefore cannot assume the Lease. The Motion to Assume shall be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Motion to Assume Lease Agreement and Lease Agreement Addendum be, and the same is hereby, denied.